NOT DESIGNATED FOR PUBLICATION

No. 115,478

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TERRY GLENN SNELL,
*Appellant*.


MEMORANDUM OPINION

Appeal from Douglas District Court; PAULA B. MARTIN, judge. Opinion filed July 14, 2017. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before GREEN, P.J., POWELL and GARDNER, JJ.


*Per Curiam*:  Terry Glenn Snell was found guilty of driving under the influence of alcohol and of interference with law enforcement. Snell contends that the deputy detained him without reasonable suspicion of a traffic offense or crime, in violation of his constitutional rights. We find that Snell is procedurally barred from raising this new basis for suppression of evidence for the first time on appeal.

1

*Factual and procedural background*

Deputy Daniel O'Hare first observed Snell's car when driving west on W. 6th Street in Lawrence, Kansas, at approximately 2 a.m. on August 23, 2013. Snell was driving east on the same street, about a quarter mile to a half mile away. Snell's hazard lights were flashing. O'Hare observed Snell's car weave within the lane, although his dashboard camera video does not show the weaving.

After Snell's car passed, O'Hare turned around to follow it. Snell turned into a Taco Bell parking lot and drove to the drive-through lane with his hazard lights still engaged. O'Hare pulled into the lot and parked. After exiting the drive-through, Snell parked near O'Hare's car.

O'Hare then exited his car, approached the open passenger window of Snell's car, and asked whether everything was okay. O'Hare observed that Snell's eyes were bloodshot and glazed, Snell's speech was slurred, and a moderate odor of alcohol emanated from the car. In response to O'Hare's inquiry, Snell stated that he had consumed "just a couple." O'Hare returned to his car and moved it directly behind Snell's car so that his dashboard camera would capture the subsequent encounter.

Although Snell complied when O'Hare asked him to exit the car and produce his driver's license, he initially did not agree to field sobriety testing or a preliminary breath test (PBT). Instead, in response to O'Hare's inquiries Snell gave the deputy a "driver, passenger, and or pedestrian rights card," which Snell indicated was his response. The card asserted that Snell was invoking his right to silence, refusing to participate in field sobriety testing, and requesting additional breath or blood testing. O'Hare read only the part of the document.

After further requests by O'Hare, Snell consented to field sobriety testing but he refused a PBT. Based on Snell's performance and refusal, O'Hare attempted to arrest Snell. Snell fled but O'Hare caught him after approximately 100 feet.

Snell was arrested and charged with four counts: misdemeanor driving under the influence; interfering with law enforcement—obstruction; refusing to take a PBT; and failing to signal.

Snell then moved to suppress the results of the intoxilyzer test and any statements he made at the time of arrest. The sole stated basis for suppression was an alleged violation of his *Miranda* rights. Although Snell asserts that the district court suppressed both the test results and statements, the record on appeal shows that the court suppressed only the intoxilyzer results.

The case proceeded to a jury trial on June 23, 2014. Prior to voir dire, Snell pleaded guilty to refusing to take a field PBT and the State dismissed the charge of failing to signal. The jury found Snell guilty of the counts for which he was tried—driving under the influence of alcohol and interference with law enforcement. The district court sentenced him to 6 months of incarceration with parole granted after 48 hours and 12 months of probation. Snell timely appealed.

*We do not reach the merits of Snell's claim that his detention was unconstitutional*

For the first time on appeal, Snell argues that his initial encounter with O'Hare constituted an investigatory detention (a *Terry* stop) for which O'Hare lacked reasonable suspicion to detain him. The State characterizes the interaction as a consensual encounter rather than a seizure, but it also contends that this court lacks the ability to entertain Snell's argument because Snell did not raise the issue before the district court. We agree.

3

*Failure to raise the issue below*

Generally, a party cannot assert constitutional grounds for reversal for the first time on appeal. *Trotter v. State*, 288 Kan. 112, 124, 200 P.3d 1236 (2009). Snell relies on two exceptions to that rule.

Snell first contends that we should hear the issue because it involves a question of law which is finally determinative of the case. *Pierce v. Board of County Commissioners*, 200 Kan. 74, 80-81, 434 P.2d 858 (1967). We find this exception inapplicable, however. The questions of whether a particular encounter was a consensual encounter or a *Terry* detention and of whether a *Terry* detention lacked reasonable suspicion are fact based, turning on the totality of the circumstances. When material facts underlying a defendant's claim are not disputed, "the issue is a question of law over which an appellate court has unlimited review." *State v. Powell*, 299 Kan. 690, 700, 325 P.3d 1162 (2014). Here, however, at least some of the relevant facts are disputed. For example, the district court made no determination about whether Snell's car was weaving in the lane. O'Hare testified that he observed Snell weaving, but Snell counters that the dashboard camera does not show weaving. To determine this fact, as important to establish reasonable suspicion, we would need to conduct a fact-specific inquiry, an exercise that is inappropriate for an appellate court. Further, where testimony conflicts, credibility calls are necessary. This court is not able to make credibility calls, and the record does not reflect the district court's credibility determinations. *State v. Kettler*, 299 Kan. 448, 466, 325 P.3d 1075 (2014) ("Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.").

Snell next contends that we may consider the issue because doing so will prevent the denial of fundamental rights or is necessary to serve the ends of justice. See *Pierce*, 200 Kan. at 81. This is a valid exception to the general rule that a party cannot assert constitutional grounds for reversal for the first time on appeal. However, even when

4

faced with a potential denial of defendant's fundamental rights, as here, we may decline to consider the issue if the record is insufficient to address the merits. *State v. Ortega-Cadelan*, 287 Kan. 157, 160, 194 P.3d 1195 (2008).

Such is the case here. The only available evidence concerning the initial encounter between O'Hare and Snell arises from the jury trial and the suppression hearing, neither of which specifically focused on the legality of detention or the initial encounter between Snell and O'Hare. Both of those hearings focused on events occurring after the initial detention had occurred. And as the State points out, evidence establishing guilt may not correspond to an issue such as the legality of the initial encounter. See *State v. Horn*, No. 114,078, 2016 WL 7494377, at *3 (Kan. App. 2016) (unpublished opinion), *petition for rev. filed* January 27, 2017.

Further, not every Fourth Amendment violation warrants suppression of evidence. Evidence should be suppressed ""only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment."" *Herring v. United States*, 555 U.S. 135, 143, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009) (stating suppression of evidence through application of the exclusionary rule is not a right the Fourth Amendment confers; the exclusionary rule is a judicially created remedy, not a right, and its application is restricted to cases where its remedial objectives will best be served). The record on appeal does not contain any facts relevant to the officer's knowledge and is thus insufficient for us to make such determinations. Accordingly, we find this exception inapplicable. Snell is bound by the general rule that a party cannot assert constitutional errors for the first time on appeal.

5

*Snell should have raised this claim at the suppression hearing*

An even more compelling reason prevents us from addressing the merits of Snell's claim in this case. Snell filed a pretrial motion to suppress evidence based on the same encounter he now claims constituted an illegal *Terry* detention. But that motion argued solely that his *Miranda* rights had been violated. It did not contend, as Snell does now, that the officer lacked reasonable suspicion to detain him and was thus unconstitutional. A defendant cannot piece-meal its theories about the legality of a search or a detention and try them seriatim, any more than a State may do so. And the State cannot do so. See *State v. Parry*, 305 Kan. 1189, 1191, 390 P.3d 879 (2017) (finding that the State's refiling a case then defending a suppression motion on a new theory after previously losing a suppression motion based on the same facts but on another theory violates the law of the case doctrine). Neither party gets a second bite at the apple. The issue decided against Snell during the suppression hearing is, for purposes of the law of the case doctrine, the same issue Snell seeks to pursue for the first time on appeal, *i.e.*, whether the evidence should be suppressed. See 305 Kan. at 1195 (finding "[t]he issue decided against the State in *Parry I* is the same issue the State seeks to pursue in this second prosecution, *i.e.*, whether the evidence seized from Parry's apartment should be suppressed").

A motion to suppress can be filed by the defendant only pursuant to statute. Our statute requires:  "The motion shall be in writing and shall allege the grounds upon which it is claimed that the confession or admission is not admissible as evidence." K.S.A. 22-3215(2). Nothing in the statute permits a defendant to state in a suppression motion only *some* of the grounds upon which it is claimed that the confession or admission is not admissible as evidence, then state different grounds in a subsequent proceeding in the same case. The statute further provides:  "The motion shall be made before preliminary examination or trial, unless opportunity therefor did not exist or the defendant was not aware of the ground for the motion, but the court in its discretion may entertain the motion at the preliminary examination or the trial." K.S.A. 22-3215(6). Nothing in the

statute permits us to entertain such a motion after trial for the first time on appeal. To allow a reopening of the question on the basis of a new legal theory to support or contest the admissibility of the evidence would defeat the purpose of this statute. Parties must present all arguments relative to the question of suppression when the issue of the admissibility of evidence is initially raised, either before or at trial as the statute requires.

Affirmed.